IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE:

TRAVIS LEE HARRY,                                            Bankruptcy Case No. 20-bk-10005

       Debtor.                                                    Chapter 7

ACTING UNITED STATES TRUSTEE,
JOHN P. FITZGERALD, III

       Plaintiff,                                                  A.P. No: _____

v.

TRAVIS LEE HARRY,

       Defendant.

_____

**COMPLAINT OBJECTING TO DISCHARGE**
_____

The Acting United States Trustee, John P. Fitzgerald, III, by counsel, requests that the Court deny the discharge of Travis Lee Harry, pursuant to 11 U.S.C. § 727(c)(1) and Bankruptcy Rule 7001(4), and alleges that:

**Parties, Standing, Jurisdiction, and Venue**

1.      John P. Fitzgerald, III, ("Plaintiff") is the Acting United States Trustee for Region Four.

2.      Travis Lee Harry ("Defendant" or "Mr. Harry") is the debtor in a Chapter 7 case before this Court, designated as Bankruptcy Case No. 20-bk-10005 on February 5, 2020.

3.      At the time of the bankruptcy petition, the Defendant resided in Princeton, Mercer County, West Virginia.

4.	The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(J).  Venue of this proceeding is in this Court under 28 U.S.C. §1408.

5.	The United States Trustee brings this complaint pursuant to 11 U.S.C. §727(c)(1), 727(a)(2)A and 727(a)(4)(A) and Bankruptcy Rules 4004 and 7001.  The United States Trustee appears pursuant to 11 U.S.C. §307 and 28 U.S.C. §586(a).

**Factual Background and Procedural History**

6.	The Defendant filed the original petition and schedules under penalty of perjury on the date of his bankruptcy filing. *See Exhibit A*.

7.	The Defendant stated under penalty of perjury in his petition that the debts listed on his schedules were primarily "consumer debts".

8.	The Defendant stated under penalty of perjury in his petition and schedules that he was married, but filing separately from his wife, whom he indicated on Schedule J, in response to question 24, lived separately, in North Carolina and used her income to support herself.

9.	In response to question 19 on Schedule A/B of both the Original Schedules (and the Amended Schedules filed on July 9, 2020 and July 12, 2020), which asked if the Defendant had any legal or equitable interest in any non-publicly traded stock or interest in any incorporated or unincorporated businesses, Mr. Harry checked the box marked "No" and provided the name of no businesses.

10.	In response to part 11 question 27 on the Statement of Financial Affairs (SOFA), Mr. Harry indicated he had been connected with only two business entities in the four years prior to filing, namely The Big Whiskey Barbeque and Range Contracting.

11.	On Schedule D, the Defendant listed secured debts on a 2014 Dodge Ram 3500, 2015 Dodge Ram 2500, Massey Ferguson tractor, 2014 4-Star Horse Trailer, Medallion camper and a 2014 Infinity QX80 SUV.

12.	The Defendant's Statement of Intention ("SOI") indicated the 2014 Infinity QX80 SUV was the only collateral he intended to surrender to a secured creditor, despite the fact he listed his employment status on Schedule I as "unemployed".  No contribution to household income was listed on Schedule I for the Defendant's wife.

2

13. The Meeting of Creditors ("MOC") in the Defendant's case was held on March 6, 2020. At the MOC, the Defendant testified under oath that he was current on payments to the creditors holding liens against the 2014 Dodge Ram 3500, 2015 Dodge Ram 2500, Massey Ferguson tractor, 2014 4-Star Horse Trailer and Medallion camper. He further testified these items were insured and that he intended to keep them. Transcript attached as ***Exhibit B***.

14. During the MOC, the attorney for the Chapter 7 Trustee asked the Defendant about his interest in and the assets of the following businesses: The Big Whiskey Barbeque, Range Contracting, Assurant Home Inspections, Blackrock International, T. L. Harry Agricultural and Canyon River Industries.

15. Mr. Harry testified, under oath, that the above-noted businesses were LLCs of which he was the sole member, but none of the companies had any assets of value, or income.

16. Mr. Harry testified under oath at the MOC that he had read and reviewed his bankruptcy schedules prior to signing them, and that they were correct, despite the fact that only he only listed two of the businesses described in paragraph 14 on the schedules and did not disclose his wife's income and expenses on Schedules I and J.

17. Mr. Harry further testified under oath at the MOC that he was married, but his wife was living in another state and that he and his wife were "separated kind of".

18. At the MOC, the Defendant testified that he and his wife sold a home in Princeton in December 2019 and that he "used every bit" of the $26,000 he received at closing to pay taxes.

19. Mr. Harry testified MOC that he was self-employed as a sole proprietor hauling horses "when people needed horses" but offered no further information.

20. Upon information and belief, the Defendant swore a false oath when he signed his original petition and schedules, knowing them to be incorrect, and when he gave incomplete and inaccurate testimony, under oath at his MOC.

21. In the six months prior to filing, the Defendant and his wife were not separated, but were both relocating to Kernersville, NC, where his wife had opened a business called Meraki Farm, which she opened in November of 2019. The business specializes in training and boarding show horses.

22. Upon information and belief, Mr. Harry operated a full-time sole proprietorship, T. L. Equine Transport, within the six months prior to filing and thereafter.

23. Upon information and belief, the Defendant's wife, Andrea Harry, actively and frequently, advertised and solicited business for the Defendant's equine hauling business on her personal social media sites, and on the website for her business, Meraki Farm. See ***Exhibit C***.

24. The Defendant and his wife maintained a joint bank account at BB&T six months before he filed his petition and for several months thereafter.

25. Upon information and belief, the Defendant and his wife, both deposited money into the joint BB&T account, and the proceeds of the account were used to pay for hay, rent, shavings, utilities, fuel, secured debt payment, etc. for both the Defendant's hauling business and the wife's farm business.

26. The real property records for the Mercer County Clerk show that the real property the Defendant sold in December 2019, which was located at 195 Sunflower St., Princeton, WV was titled solely in the name of Travis Lee Harry, the Defendant.

27. Upon information and belief, the Defendant received $25,899.47 in net proceeds from the sale of the above noted real property.  Mr. Harry paid approximately $15,000 of the net sale proceeds toward taxes and HVAC work, but he deposited the remainder of the money (approximately $10,000) in the joint bank account he and his wife maintained at BB&T.

28. Contrary to his sworn testimony at the March 6, 2020 MOC that he used "every bit" of the money from the sale of the Princeton real property to pay taxes, the Defendant and his wife, in fact used more than $10,000 of the net sale proceeds for business rent, rental of a home in Kernersville, NC, hay, shavings, grain, gasoline, supply bills for the wife's business, etc. ***See Exhibit D*** prepared and provided by Defendant.

29. In response to Question 7 in Part 3 of his SOFA, Mr. Harry reported that he had not made a payment on any debt that was owed to an insider within 1 year of the filing of his bankruptcy petition.

30. Upon information and belief, Mr. Harry made several payments in the year prior to filing for bankruptcy on debts owed to, for or by, his wife and had repaid a loan to his mother, Vickie Harry.

31. Upon information and belief, Mr. Harry's petition and schedules contained serious omissions regarding his household income, business affiliations, expenditures, assets, and income.

32. Mr. Harry, upon prompting by the attorney for the Chapter 7 Trustee at his MOC, admitted he had owned/operated five businesses not listed on his schedules, but failed to fully disclose his hauling business, T. L. Harry Equine Transport.

33. On June 25, 2020, a motion was filed by the Office of the United States Trustee for a Rule 2004 examination of the Defendant.

34. On July 9, 2020, the day before the Rule 2004 Examination, an amendment was filed to the Defendant's schedules, which the Defendant had purportedly read, reviewed, and signed under penalty of perjury before counsel filed it.  This amendment designated the bulk of the Defendant's debts as "business related", but still contained numerous omissions. See ***Exhibit E***.

35. The Defendant voluntarily produced numerous financial documents to the Office of the United States Trustee on July 9, 2020.

36. The documents produced by the Defendant established that the Defendant had made substantial and material omissions from his bankruptcy petition and schedules, in addition to those described herein and gave false and misleading testimony under oath at his MOC.

37. On July 10, 2020, the Defendant testified under oath at the Rule 2004 Examination. See Exhibit E Transcript of Rule 2004 Examination.

38. During the Rule 2004 Examination, the Defendant stated that he and his wife, Andrea Harry, had never been legally separated, but that he had instead stayed in West Virginia, to wrap up The Big Whiskey Barbeque business and sell the home in which they resided in Princeton, WV, from approximately August of 2019 through December 2019.  During this time, the Defendant admitted that he traveled to and from Kernersville, NC, to be with his wife on the weekends, and on those occasions often helped her at Meraki Farm, and paid bills for her business, Meraki Farm, as well as living expenses for his wife.

39. The Defendant offered additional testimony during the Rule 2004 examination that was contrary to assertions contained in his petition and schedules, and testimony he gave, under oath at his MOC.

40. On July 13, 2020, a second amendment (*Exhibit F*) was filed to the Defendant's petition and schedules. While the Defendant did purportedly read, review and sign the July 13, 2020 amended schedules, the second amendment is not accurate based on a review of the financial documents he produced prior to his Rule 2004 Examination, and is contrary to his sworn testimony during the Rule 2004 Examination on July 9, 2020.

## COUNT I
### [False Oath - 11 U.S.C. § 727(a)(4)(A)]

41. The Plaintiff incorporates Paragraphs 1 through 40 by reference.

42. The Defendant, knowingly and fraudulently, in this case, made a false oath when he failed to report his ownership interest in the businesses described in paragraphs 14 and 22 above.

43. The discharge of Defendant should be denied pursuant to 11 U.S.C. §727(a)(4)(A).

## COUNT II
### [False Oath – 11 U.S.C. §727(a)(4)(A)]

44. The Plaintiff incorporates Paragraphs 1 through 40 by reference.

45. The Defendant, knowingly and fraudulently, in this case, made a false oath when he grossly underreported his household income from the operation of a business as described in Paragraphs 14 and did not include the income of his wife's business on Schedule I.

46. The discharge of Defendant should be denied pursuant to 11 U.S.C. §727(a)(4)(A).

## COUNT III
### [False Oath - 11 U.S.C. § 727(a)(4)(A)]

47. The Plaintiff incorporates Paragraphs 1 through 40 by reference.

48. The Defendant, knowingly and fraudulently, in this case, made a false oath when he failed to report that he retained $10,000 of the proceeds from the sale of his Princeton real property and used it to repay a loan from his mother and to pay debts for or on behalf of his wife and her business, Meraki Farm, within the year prior to filing.

49.     The discharge of Defendant should be denied pursuant to 11 U.S.C. §727(a)(4)(A).

## COUNT IV
### [Concealment of Property – 11 U.S.C. § 727(a)(2)(B)]

50.     The Plaintiff incorporates Paragraphs 1 through 40 by reference.

51.     By failing to disclose his interest in numerous businesses in his Schedules, his Amended Schedules, and his SoFA, the Defendant, with intent to hinder, delay or defraud a creditor or an officer of the estate, concealed his property.

52.     The discharge of Defendant should be denied pursuant to 11 U.S.C. §727(a)(2)(B).

## COUNT V
### [Concealment of Property – 11 U.S.C. § 727(a)(2)(B)]

53.     The Plaintiff incorporates Paragraphs 1 through 40 by reference.

54.     By failing to disclose that he retained approximately $10,000 from the sale of his real property in Princeton, WV, which he used to repay a loan from his mother and debts for his wife and her business, Meraki Farm, in his amended petition, schedules and SoFA, the Defendant, with intent to hinder, delay or defraud a creditor or an officer of the estate, concealed his property.

55.     The discharge of Defendant should be denied pursuant to 11 U.S.C. §727(a)(2)(B).

## COUNT VI
### [Concealment of Property – 11 U.S.C. § 727(a)(2)(B)

56.     The Plaintiff incorporates Paragraphs 1 through 40 by reference.

57.     By failing to disclose potential voidable preference payments to, or on behalf of, his wife, Andrea Harry and her business, and a loan to his mother, Vickie Harry, in his amended petition, schedules and SoFA, the Defendant, with intent to hinder, delay or defraud a creditor or an officer of the estate, concealed his property.

58.     The discharge of Defendant should be denied pursuant to 11 U.S.C. § 727(a)(2)(B).

WHEREFORE, for the reasons set forth herein, the United States Trustee requests that the Court deny the discharge of the Defendant.

                Respectfully submitted,

                JOHN P. FITZGERALD, III
                ACTING UNITED STATES TRUSTEE

                By Counsel

*/s/ Shari L. Collias*
Shari L. Collias (WV Bar No. 4997)
Office of United States Trustee
United States Courthouse, Room 2025
300 Virginia Street, East
Charleston, WV 25301
Phone: (304) 347-3400
Shari.Collias@usdoj.gov